As a preliminary point, the adversary case recently, it was an order dismissing it a little bit ago. And my client is determining whether she'll appeal. Okay. That's pending. And it's very germane because a lot of the argument was the prosecution of that lawsuit, that adversary case. That's important. You know, that's a very recent development. The argument itself was the reasonableness of the judge's order lifting stay and the reconsideration because there was this lawsuit being filed and prosecuted as well as a protection. That's kind of the backdrop. Some of the legal arguments that I think were important was the creditor-debtor relationship. The lower court, the bankruptcy was not. I did cite some cases, the Johnson versus the home state bank and then some progeny. Let me ask you about that issue because you've appealed from the order denying reconsideration and I noticed that the court didn't rely in the reconsideration order on the bankruptcy. I think, Your Honor, the reason it's brought up, it's the underpinnings of what went on. That the bankruptcy court in the various arguments and maybe not as a point of opinion had felt that the debtor didn't have this privity and relationship and significance in the case. I thought it was a valid point to explain that there is a basis with the cases I even if it's not a direct part of the opinion, it's kind of what underpins what has been going on with the court. Nothing in particular on the chapter 11 that I did but the same analysis I thought could be analogous in regards to Carter for a couple of cases. The legal standard with regard to the motion to reconsider is whether there's any unusual circumstances and I submitted in my briefing in the argument that this case would meet that legal standard of unusual circumstances. The fact that we're seeking prosecution of the through a lawsuit as opposed to a more traditional path of valuing and then seeking confirmation. I have to say in my court to see a debtor challenge the validity of the mortgage through an adversary proceeding or a claim objection is not real unusual. Okay. Also, the fact that it's a third party, that she didn't originally, that Senso didn't originally have the debt, that in itself is somewhat of a unique fact. That's why I tried to fall within the highly unusual circumstances. Those are my points, Your Honor. Okay. Any questions from? I think we understand this one. Some of the ones we've had today are not as clear. I have no questions. You can reserve the rest of your time for rebuttal. Yes, Your Honor. Okay. Thank you. All right. Ms. Winslow. Good afternoon, Your Honor. The bankruptcy court did not abuse its discretion when it granted Shell Point's motion for relief from stay, nor did it abuse its discretion when it denied Senso's motion for relief from judgment. The bankruptcy court granted stay relief under both 362 D1 and 362 D2. Turning first to 362 D2, there was no dispute before the bankruptcy court, and there's no dispute before this court that there was no equity in the property. Senso also did not submit any meaningful evidence that the property was necessary for reorganization. In fact, Senso did not submit any evidence in support of the fact that the property was necessary for reorganization in its opposition to the motion for stay relief. There was no plan pending, right? There was no plan pending, Your Honor, and actually until to this day, there is no plan pending. As a result of there being no evidence to support the fact that the property was necessary for reorganization, the bankruptcy court did not abuse its discretion when it determined that Senso had not met its burden as to that issue. Senso also failed to show a reasonable probability of reorganization during a reasonable timeframe. Senso filed for bankruptcy in October of 2019. In February of 2020, it filed a motion to extend the exclusivity period. It stated in that motion that it intended to obtain orders valuing the subject property and two other properties, and additionally that Senso intended to file an adversary proceeding because it believed that my client's claim was unsecured. The bankruptcy court granted that motion and extended the but Senso did not move for those orders valuing the property, nor did Senso file the adversary proceeding within the extended exclusivity period. In fact, it wasn't until one day before the continued hearing on Shell Point's motion for stay relief that the adversary proceeding was actually filed. Senso was not moving meaningfully toward reorganization as a result. There was no statement or evidence in the opposition to the motion for stay relief that a plan had been formulated to your honor's point. No plan was actually filed, and there was no statement or evidence, as I've already said, that the property was actually necessary for reorganization. It wasn't until Senso filed its motion for relief from judgment that Senso actually addressed this point, and Senso attached to its motion a declaration from Senso's principal and owner, Melanie Schulte, which stated that the property was necessary for reorganization. The bankruptcy court found that Ms. Schulte's declaration and the evidence submitted was not newly discovered evidence, and therefore it was not necessary to reconsider the bankruptcy court's prior order. On appeal, Senso claims that there were highly unusual circumstances warranting reconsideration, and it points to the adversary proceeding as the highly unusual circumstance, and as your honor has discussed with Mr. Beck in his argument, it's not unusual for an adversary proceeding to be pending at the same time that a chapter 11 is pending. In fact, there's no cases cited in the opening brief to suggest otherwise. Regardless, the bankruptcy court considered the fact that an adversary proceeding was pending in its initial order on the motion for stay relief. It's referenced in the order. Therefore, the bankruptcy court did not abuse its discretion when it declined to reconsider on that basis. Even if Ms. Schulte's statement had been considered new evidence, Ms. Schulte's declaration with respect to whether the property was necessary for reorganization merely stated that the property was necessary for reorganization. There was no statement or actual evidence that Ms. Schulte pointed to to support that legal conclusion. And the legal standard is not it's necessary, but it's necessary for a reorganization that is reasonably in prospect. That's the timber standard, isn't it? That's right, your honor. That's right, your honor. And so there's nothing in the record that shows there's no pending plan and there's no evidence to date, it sounds like, that there's a plan that's reasonably in prospect that involves this property. That's right, your honor. That's exactly right. And for those reasons, the bankruptcy court did not abuse its discretion when it granted stay relief under 362 D2. Now, the bankruptcy court also granted stay relief under 362 D1. Initially, the bankruptcy court found that there wasn't adequate protection. CINSO had not offered any adequate protection prior to Shell Point filing its motion, nor did it offer any protection in the initial opposition to the motion for stay relief. Adequate protection was required in this circumstance where you have no equity cushion, the loan was in default by more than $260,000. There hadn't been a payment on the loan since 2012. CINSO through Ms. Schulte had owned the property following an HOA foreclosure sale in 2013. Ms. Schulte and CINSO had never made any payments on the loan. The monthly mortgage payment was more than $2,600, and the property was not generating any income. CINSO, a day before the hearing, filed a supplement to its opposition to the motion for stay relief, offering $1,000 in adequate protection payments while the adversary proceeding was pending. But there was nothing in that two-page supplement that stated the source of that $1,000, whether the why CINSO thought that $1,000 of adequate protection sufficiently protected Shell Point, especially given the large delinquency and the lack of equity in the property. The bankruptcy court also found additional cause given the lack of contractual privity between the parties. Let me ask you about that because there's actually two reasons why there was no privity between these parties, right? I mean, one was CINSO acquired the property after the mortgage loan was made. And the other reason is your client bought the note later on. So why should it count against CINSO but not sort of count against your client that there was a lack of privity? I don't understand what you mean by why it shouldn't count against CINSO. Your argument is that it's an element of cause or adds to the cause calculus that the debtor acquired this property after the loan was made. But I assume your client would argue that it doesn't matter at all that your client acquired the loan after the loan was made. And that just seems not symmetrical to me. Why should there be that difference in treatment? Well, the loan is currently owned by Fannie Mae who acquired the loan soon after origination. And Fannie Mae would be in privity with the original lender. It took what the lender gave. It's in privity as to that contract. CINSO's in privity with the, at least through a chain, in privity with the original borrower too by that same logic, right? Correct, Your Honor. But the difference is that my clients did not enter into a contract with CINSO. And the reason why that's important is a prospective lender and then Fannie Mae would be concerned with a borrower's credit worthiness, a borrower's reliability and integrity. And a lender has the right to lend to any people that it believes will honor the based on its review of that borrower's credit worthiness. In fact, this was explicitly discussed in the Kizilnick case that we cited in our answering brief. And in the Kizilnick case, the New York Bankruptcy Court found it significant that with respect to this third-party stranger to the contract that the lender and then the successor owner to the property never had the whether it wanted to be in a contract with that third-party stranger. Kind of a minor point, but do you know whether the lending agreement set forth the possibility that the loan was going to be transferred such that the borrower knew that? It might even have agreed? Yes, Your Honor. I can't remember the exact provision. It sounds like that's never happened, right? That's fairly typical probably. Right, it is. It is a standard provision in the deed of trust. CINSO is a stranger to this contract, getting back to my point. And the lender in Shell Point never had the opportunity to evaluate whether it even wanted to be in a contract with CINSO. They weren't able to assess CINSO's credit worthiness and to contract around any sort of issue that it saw with that credit worthiness. CINSO inserted itself into that relationship with knowledge that it was purchasing a property that was significantly over-encumbered and then once it filed for bankruptcy, did not meaningfully move towards that's the issue that the bankruptcy court found significant when it comes to cause. What the bankruptcy court said was it was the lack of contractual privity combined with the fact that CINSO was not progressing in the Chapter 11 bankruptcy that gave rise to cause because under those circumstances, Shell Point should not be required to incur additional delay from a debtor with whom it had no relationship. And I will just point out another distinction, Your Honor, with respect to this debtor-creditor relationship. CINSO relies primarily on the Supreme Court case Johnson v. Home State Bank to assert that there's no debtor-creditor relationship, I'm sorry, that there is a debtor-creditor relationship. The issue in Johnson was different than what's at issue here. In Johnson, the Supreme Court was considering whether a debtor could include in its Chapter 13 plan of reorganization, a lien where the personal obligation, which the lien secured, was previously discharged in a Chapter 7. There was still a contract between the parties in Johnson. Now, while it is true that as CINSO cites in its opening brief, there are bankruptcy courts that have pushed Johnson past Chapter 20 cases to find that strangers of loan documents can modify those documents. There are other cases that find differently, which we cited in our answering brief. And it's also important to note that none of the cases cited by CINSO address whether the lack of contractual privity would give rise to cause under 362 D.1. The only case cited by either party that deals with that specific issue is the Pasquillo case that we cite in our answering brief. And that's a bankruptcy court case out of New York. And the bankruptcy court in Pasquillo acknowledged that Johnson existed, acknowledged that there wasn't a contractual relationship in Johnson, and that that was a significant difference as to what was before the bankruptcy court there. You would agree, wouldn't you? We really don't need to go there because the bankruptcy court didn't rely on that reasoning in the order that's on appeal, the reconsideration order, correct? That's right, Your Honor. That's right, Your Honor. It was, though, as far as the order on the motion per that the court was considering. Frankly, Your Honor, I think that the court could easily affirm the bankruptcy court on 362 D.1. I think that, I'm sorry, 362 D.2. I think that's an easier avenue for the court to affirm. And again, I'll just point out that it is significant that the court granted stay release under both 362 D.1 and 362 D.2. So the court could affirm under either of those statutes. And Your Honor, you got to my next point that whether there is a debtor-creditor relationship really is tangential to the issue as to the issue that was presented to the bankruptcy court. Your Honors, I don't have anything other to add. I'm happy to answer any questions that you may have. I don't have any more. Thank you. Anyone have questions? No. Thank you very much. Thank you. All right, Mr. Beck, you can use the rest of your time for rebuttal. Yes, Your Honor. I would point out that the debtor did offer adequate protection. The $1,000 quoted was correct while the motion was pending. In addition, the debtor had made significant improvements to the property. This property was purchased on HOA sale, and that was put in the declaration, and had provided insurance and taxes. So a lot was said of what was not done. You know, I think it's important that the complete record be looked at, that there had been improvements, there had been a lot of money paid, just there wasn't a deal struck with the bank, unfortunately. I think you talked quite a bit about the privity issue. I think you have everything in front of you. I think it's been said. All right. All right, well, any questions for my colleagues? Thank you very much. All right, thank you. Thank you for your good arguments. This will be taken under submission. And with that, we are done with the argument for today, and we will reconvene in case conference in 10 minutes. Thank you very much. Thank you. Thank you very much.
judges: Taylor, Faris, Laferty